## <u>Exhibit 1</u>

**The Exhibit**

**<u>EXHIBIT U</u>**

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| ATP III GP, LTD., in its capacity as<br>General Partner of ATP Life Science<br>Ventures, L.P., | ) <br> ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | |
| v. | ) <br> ) | C.A. No. 2025-0607-KSJM |
| RIGMORA BIOTECH INVESTOR<br>ONE LP and RIGMORA BIOTECH<br>INVESTOR TWO LP, | ) <br> ) <br> ) <br> ) | **REDACTED PUBLIC VERSION**<br>**EFILED: June 20, 2025** |
| Defendants. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION TO EXPEDITE PROCEEDINGS**

Expedition is warranted because, without it, the Fund faces the irreparable loss of ▬▬▬ innovative Delaware companies that depend almost exclusively on Rigmora's compliance with its budget approval and capital commitments. Desperate to avoid those obligations and the LPA's default provisions, Rigmora responded by filing retaliatory claims to remove ATP as general partner, strip it of authority to maintain this action, and evade the LPA default mechanism. But ATP has met the low burden of setting forth colorable claims that Rigmora is jeopardizing the Fund and its portfolio companies by repudiating its contractual obligations and reneging on already-approved budgets. In response, Rigmora mischaracterizes ATP's claims and proposes to drag the Fund through years of non-expedited

litigation.  But the facts are clear:  The Fund and numerous Delaware entities face irreparable and fatal harm and these are the only proceedings that can avoid that result.  Indeed, the Cayman winding up petition actually supports expedition because expedition here is the only mechanism to preserve the Fund before the Cayman courts hear Rigmora's improper gambit to remove ATP.  The Motion should be granted.

## ARGUMENT

## I.    ATP HAS COLORABLE CLAIMS.

### A.    This Court Has Jurisdiction.

1.    Hoping to avoid this Court's review of its misconduct, Rigmora retaliated by filing litigation in the Cayman Islands and then asking the Court not to consider ATP's first-filed claims.  But Rigmora's one-page motion to dismiss and its motion to stay only confirm its pattern of breaching its promises; Rigmora consented to Delaware jurisdiction and waived forum and venue objections.  Compl. ¶ 24.  In any event, the Court can set deadlines to address a potentially dispositive motion as part of the larger expedited schedule or defer the consideration of dispositive issues to later in the proceedings, as it has done previously.  *See Joyce v. Cuccia*, 1996 WL 422339, at *8 (Del. Ch. July 24, 1996) (expediting count that defendant intended to move to dismiss and "permitt[ing] reasonable expedited discovery" during the pendency of the forthcoming motions); *CP Carco, LP v. Ams.*

2

*Leading Fin., LLC*, C.A. No. 2020-0120-JTL, at 36, 45, 49 (Del. Ch. Mar. 12, 2020) (TRANSCRIPT) (expediting case despite *McWane* issues and directing defendant to answer); *Ropko v. McNeill*, C.A. No. 2024-1193-PAF, at 2 (Del. Ch. Jan. 27, 2025) (ORDER) (denying motion to stay discovery regardless of pending dispositive motions in expedited action).

2.    Should the Court nonetheless address these issues now, Rigmora's jurisdiction arguments are unfounded.  ATP seeks the equitable remedy of specific performance, over which this Court has jurisdiction.  *Endowment Rsch. Gp. v. Wildcat Venture P'rs*, 2021 WL 841049, at *6 (Del. Ch. Mar. 5, 2021) ("the Court of Chancery can acquire subject matter jurisdiction over a cause…if…the plaintiff requests relief that is equitable in nature[.]").

3.    Rigmora attempts to circumscribe the requested relief with the blinkered perspective that ATP seeks merely "payment of sums of money."  Opp. ¶ 12.  It ignores that ATP's First Cause of Action is to compel performance with Rigmora's obligation to engage in good faith on portfolio company budgets, including specific performance "compelling the Family Office LP to consider reasonable budgets in good faith."  Compl. ¶ 164.  This is a well-established equitable remedy.  *See BAE Sys. Info. & Elec. Sys. Integration v. Lockheed Martin*, 2009 WL 264088, at *5 (Del. Ch. Feb. 3, 2009) (declining to dismiss claims that an agreement "require[d] the parties to 'meet together as necessary to coordinate their

3

pursuit activities'" noting "value exists in this right to meet regularly" ); *Great-West Invs. v. Thomas H. Lee P'rs*, 2011 WL 284992, at *9-10 (Del. Ch. Jan. 14, 2011) (denying dismissal of a claim for specific performance of a contract requirement to negotiate in good faith).

4.      The mere fact that the budget and capital call process may involve money does not mean ATP has an adequate remedy at law.  "Even where a remedy at law is adequate … equitable jurisdiction may, nonetheless, exist when that remedy at law would be inadequate to cure threatened prospective injury." *Athene Life & Annuity v. Am. Gen. Life Ins.*, 2019 WL 3451376, at *6 (Del. Ch. July 31, 2019). Forcing ATP to chase damages in Superior Court every time Rigmora flouts its obligations presents a classic equitable case where a plaintiff is "unable to fully recover in a single suit, but would instead be forced to bring a 'multiplicity' of suits." *Id.*; *see Deriemer v. Bennett*, 1985 WL 165728, at *3 (Del. Ch. Apr. 11, 1985) (ongoing breach of partnership obligations and continuing injury warranted equitable jurisdiction).

5.      Further, ATP has asked the Court to fashion a more flexible, tailored remedy that would deem Rigmora to have waived its right to approve budgets and permit ATP to call capital for clinical-stage portfolio companies subject to Rigmora's blanket refusal to approve budgets or coercive write-off demands. Compl. ¶ 163-64.  This is precisely the flexibility that equity provides, essentially

4

enjoining Rigmora's invocation of a budget approval condition it has wielded in bad faith. "Equitable remedies ... are distinguished by their flexibility, their unlimited variety, their adaptability to circumstances, and the natural rules which govern their use." *In re Oxbow Carbon LLC Unitholder Litig.*, 2018 WL 3655257, at *3 (Del. Ch. Aug. 1, 2018) (quoting 1 Pomeroy, EQUITY JURISPRUDENCE § 109, at 141 (5th ed. 1941)), *vacated on other grounds*, 202 A.3d 482 (Del. 2019). ATP asks for more than payment of money; it also asks the Court to "employ judicial principles and tools creatively so as to effect justice…." *Id*.

6.      This is not a situation where damages would be "as complete, practical, and efficient to the ends of justice and its prompt administration as the equitable remedy ... available to the plaintiff as a matter of right." *E. Balt LLC v. E. Balt US, LLC*, 2015 WL 3473384, at *2 (Del. Ch. May 28, 2015) (quoting Wolfe & Pittenger, § 12.03[b][2], at 12–42). To the contrary, this Court can provide "a more 'certain, prompt, complete, [and] efficient' remedy than is available at law" because only specific performance or an equitable order authorizing ATP to invest in companies with budget requests foreclosed by Rigmora can salvage the Fund and the medical promise of its portfolio companies. *Id*. Just as compelling release from an escrow can be an equitable remedy, so too is compelling the actions needed to accomplish a capital call. *See Reddy v. 2nd Chance Treatment Ctrs.*, 2024 WL 5088687, at *12 (Del. Ch. Dec. 12, 2024).

5

**B.      Rigmora Breached The LPA.**

7.      ATP's Motion demonstrates the more-than-colorable claim that Rigmora breached its obligations to: (i) consider reasonable budget requests in good faith; and (ii) respond to capital calls for approved budgets.  Mot. ¶ 20.

8.      To argue otherwise, Rigmora mischaracterizes ATP's claims to focus solely on  the capital calls.  Rigmora argues that ATP is "striking out the budgeting requirement," Opp. ¶ 14, but blithely ignores ATP's First Cause of Action, which alleges Rigmora breached its duty to consider and approve the very budget approvals that trigger the capital calls.  Rigmora then doubles down on this mischaracterization by claiming ATP only disputes capital calls filed "the night [ATP] filed the Complaint."  Opp. ¶ 1.  But Rigmora ignores the detailed allegations that it refused to approve budgets for months and repudiated its obligation to approve them in the future or comply with future fundings.  Compl. ¶¶  39, 67, 130-48.

9.      Rigmora's Opposition offers zero defense of the breach of its contractual obligation to review and approve reasonable budgets.  Nor can it.  On May 15, Rigmora's CIO repudiated the LPA and made clear it will not approve budgets or make capital calls, breaching its obligation to "███████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████."  *Id.*  Rigmora offers no excuse for this breach.  And while Rigmora

complains about the default charge provision to which it agreed, Opp. ¶ 15, it has never withdrawn its repudiation triggering the default.

## II.    ATP FACES IRREPARABLE HARM ABSENT EXPEDITION.

10.    ATP has met its burden to "show a sufficient possibility of a threatened irreparable injury." *Icahn P'rs v. Amylin Pharm.*, 2012 WL 1526814, at \*3 (Del. Ch. Apr. 20, 2012).  Absent expedited proceedings, the Fund's portfolio companies will cease to exist ███████████████████████.  Mot. ¶ 1.  If budgets are not approved and funds are not received, portfolio companies will go bankrupt or have to constrain operations—costing valuable research and jobs.  *Id.*

11.    Rigmora's actions have *conceded* the imminent harm that its breaches are about to wreck.  Just five days after this action was filed, Rigmora offered the Fund ████████ for the ostensible purpose of keeping the portfolio companies operational "to preserve the status quo."  Opp. ¶ 17.  But Rigmora hides the Trojan Horse in its offer: it was conditioned on ATP not making "further capital calls during the pending litigation" without its consent.  Opp. Ex. 4.  And it proposed only ██ ████, less than ██ of the amount due under the approved budgets.  Compl. ¶ 10. When that amount proves inadequate (as it shortly would), Rigmora offered only to "consider" further requests, leaving ATP powerless to call further capital to keep the

Fund's investments afloat.[1]  *Id.*  Rigmora argues it offered the Fund a ████████ life preserver and asks ATP and the Court to overlook that it is tied to an anvil.

12.    Despite offering ████████ to "maintain the status quo," Rigmora pretends that the risk to the portfolio companies is a fiction, "not supported by any plausible allegations." Opp. ¶¶ 17, 19.  That argument cites nothing and contradicts its own offer.  ATP's Complaint is rife with verified allegations explaining the dire needs of ██████ portfolio companies.  Compl. ¶¶ 3, 125.  Rigmora already forced one company (████████) into bankruptcy and layoffs.  *Id.* ¶ 89.  ████████ face imminent shut-down, with ████ more potentially thereafter—costing over two hundred people their jobs.  *Id*. ¶ 149.

13.    Rigmora misleadingly responds by claiming the Fund can use its investment in Braeburn of approximately ████████.  Opp. ¶ 19.  Rigmora does not tell the Court that Braeburn is an illiquid private investment, encumbered by almost ████████ of prior obligations, including a ████████ royalty arrangement and a bank loan of which Rigmora is fully aware.  Compl. ¶ 61.

---

[1] Rigmora also conditioned funding on ATP waiving the "default procedure," Opp. Ex. 4, requiring ATP to forfeit the principal mechanism that compels Rigmora to honor its LPA commitments.

14.    Rigmora further argues that the loss of these companies can be remedied with damages.  Opp. ¶ 20.[2]  That is incorrect.  Each portfolio company is a unique asset developing groundbreaking medical treatments.   The loss of these *unique* assets is irreparable.   *See E.I. du Pont de Nemours & Co. v. Bayer CropScience*, 958 A.2d 245, 258 (Del. Ch. 2008) (irreparable harm was shown when the company would be deprived of a unique good that may have resulted in products "new to the market.").  This damage done to the Fund, not just the companies, by this kind of asset dissipation cannot be remedied by damages.  *See Destra Targeted Income Unit Inv. Tr. v. Parmjit Singh Parmar*, 2017 WL 373207, at *2 (Del. Ch. Jan. 25, 2017) (discussing irreparable harm, "[a] meaningful threat that a defendant may render relief meaningless by dissipating assets or removing them from the court's jurisdiction has been held to support preliminary relief").

---

[2] Rigmora cites readily distinguishable cases involving harms that were quantifiable and certain.  *See MyCarrier v. Project44*, 2025 WL 674212, at *11 (Del. Ch. Mar. 3, 2025) (alleged harm is a calculable loss of revenue from one product); *Gradient OC Master v. NBC Universal*, 930 A.2d 104, 132 (Del. Ch. 2007) (calculating damages as the loss in stock value between two dates).

9

## **CONCLUSION**

ATP requests that the Court expedite this action.

OF COUNSEL:

Andrew Berdon
Rachel E. Epstein
Alex Zuckerman
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
295 Fifth Avenue
New York, New York 10016
(212) 849-7000

Dated: June 12, 2025

/s/  Michael A. Barlow
Michael A. Barlow (#3928)
Shannon M. Doughty (#6785)
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
500 Delaware Avenue, Suite 220
Wilmington, Delaware 19801
(302) 302-4000
michaelbarlow@quinnemanuel.com
shannondoughty@quinnemanuel.com

*Attorneys for Plaintiff ATP III GP, Ltd.*

Words: 1,975 / 2,000